[No. 981.  Decided November 15, 1893.]

FIRST NATIONAL BANK OF ABERDEEN, *Respondent*, v.
JULIUS ANDREWS *et al.*, *Appellants*.

NATIONAL BANKS — WHEN MAY TAKE REAL ESTATE MORTGAGES —
ASSIGNMENT OF SECURED NOTES — PRIORITIES.

A national bank has authority to take an assignment of a note
and mortgage upon real estate for money loaned the mortgagee.

Where two notes executed at the same time but payable at
different dates are secured by a mortgage upon real estate, the as-
signment of the notes to different parties does not give the assignee
of the note first maturing a priority in the proceeds of the mort-
gaged premises, but the assignees are entitled to share *pro rata*
therein.  (*Miller v. Washington Savings Bank*, 5 Wash. 200, distin-
guished.)

*Appeal from Superior Court, Chehalis County.*

*N. W. Bush*, for appellants.

*McKinlay, Linn & Bridges*, for respondent.

The opinion of the court was delivered by

DUNBAR, C. J. — On December 31, 1891, Andrews made
his two promissory notes payable to E. C. Finch, num-
bered 1 and 2.  No. 1 was payable six months from date,
and No. 2 was payable nine months from date.  At the
time of the execution of the notes, Andrews made and de-
livered to Finch a mortgage on real estate, to secure the
payment of both of said notes.  On said day Finch sold
note No. 1 to the First National Bank of Aberdeen, and
guaranteed the payment thereof.  No assignment of any
part of the mortgage was made to the bank, nor was the
mortgage delivered to it.  The mortgage was recorded by
Finch on March 28, 1892, in the proper office of record.
On April 9, 1892, Finch sold note No. 2 to Alexander
Young, and endorsed it without recourse on him, but at the
same time he made and delivered a written assignment to
so much of said mortgage as secured the payment of note

No. 2, and also delivered to Young the mortgage itself. An action was brought by the bank, to which Young was made a party. Young afterwards brought an action to foreclose, and these actions were consolidated by the court, and upon which trial the court decided that the note of the bank was entitled to a priority of the proceeds arising from the sale of the mortgaged premises.

There are two questions of law involved in this case: *First*, The question of authority on the part of the national bank to take a mortgage on real estate to secure payment of a loan where a debt had not been previously contracted. *Second*, The question of priority, where the holder of two promissory notes, coming due at different times, secured by mortgage, parts with their ownership to different persons at different times; and the sum realized from the sale of the mortgaged premises proves insufficient to pay the notes in full.

The first question involves the determination of the scope and extent of the prohibition imposed upon national banks by §§ 5136–37 of the Revised Statutes of the United States, which provides, in substance, that a national bank may loan money on personal security, and that it may purchase, hold and convey real estate for the following purposes, and no other:

"*First:* Such as shall be necessary for its immediate accommodation in the transaction of its business.

"*Second:* Such as shall be mortgaged to it in good faith by way of security for debts previously contracted.

"*Third:* Such as shall be conveyed to it in satisfaction of debts previously contracted in the course of its dealings.

*Fourth:* Such as it shall purchase at sales under judgments, decrees or mortgages held by the association, or shall purchase to secure debts due to it."

Upon the construction of this statute the courts of the different states are divided; but the supreme court of the United States has uniformly held that a distinction can be

made between borrowing money on real estate and accepting an assignment of a mortgage by the mortgagee as security for money borrowed by the said mortgagee. This doctrine was first announced in *National Bank v. Mathews*, 98 U. S. 621. In that case A executed a promissory note to B, and secured in payment thereof a deed of trust of lands, which was in fact a mortgage with a power of sale annexed. The bank, on security of the note and deed, loaned money to B, who thereupon assigned them to the bank. It was held that the bank was entitled to enforce the collection of the note by sale of the lands. This decision was afterwards endorsed, and the doctrine reaffirmed in *National Bank v. Whitney*, 103 U. S. 99; *Reynolds v. National Bank*, 112 U. S. 405 (5 Sup. Ct. Rep. 213), and in *Fortier v. National Bank*, 112 U. S. 439 (5 Sup. Ct. Rep. 234). Whether, if the statute were before us for primary construction, we would conclude that the distinction made by the supreme court of the United States was logical, there might be some question; but as it is a construction of the United States statute, and the United States supreme court has decided in *Swope v. Leffingwell*, 105 U. S. 3, that it has authority to reëxamine the judgment of a state court where this question is involved, we feel bound to follow the decisions of that tribunal.

On the question of priority of the assignees, an investigation of the authorities in this opinion would be profitless, for the rules announced by the courts are absolutely at variance and cannot be reconciled. There are, however, two general rules promulgated by the courts. The one established in a large number of states is, that where the notes are made payable at different dates and are assigned by the mortgagee, either with or without an accompanying assignment of the mortgage, the holder of the first note coming due has a prior right to the proceeds of the mort-

gaged premises.  In other words, that the right of priority among the respective assignees was tested by the maturity of the respective notes.  While a vast number of cases of equally respectable authority hold that, under the circumstances mentioned above, there is no preference given to the first note maturing, and that in the absence of expressed stipulation there is no priority in the case at all, and that all the assignees are entitled to share *pro rata* in the proceeds of the mortgaged premises.  Although the former rule is favored by such eminent authority as Mr. Pomeroy in his Equity Jurisprudence, § 1201, the latter rule appeals to our judgment as being more equitable. The mortgage in the first place was executed for the equal benefit of all the notes.  The security was intended as much for the last note coming due as for the first one. There seems to be no real reason why the relative positions of the notes and mortgage should be changed because the ownership of the notes has changed.  The value of the notes frequently depends upon the security.  We think the more equitable and consistent rule is to leave their values undisturbed by their assignment.

*Miller v. Washington Savings Bank*, decided by this court and reported in 5 Wash. 200 (31 Pac. Rep. 712), is cited by the respondent in favor of his contention; but an examination of this case shows that the court did not attempt to announce any general rule on the question involved in this case.  That decision, in fact, goes further against the position of respondent in this case than we find it necessary to go, as it was there decided that the priority was in favor of the note last maturing.  However, no rule was established, as it was decided squarely upon the particular circumstances of the case.

With this view of the law, the judgment will be reversed, and the cause remanded with instructions to ascertain the amounts due on the respective notes, and order a *pro rata*

application thereon of the proceeds of the mortgaged premises.

ANDERS, HOYT, SCOTT and STILES, JJ., concur.